UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KENNETH BERNARD BURNEY,

Plaintiff,

v. Case No. 25-CV-924

DR. TOMMY ONJUKKA et al.,

Defendants.

---

**DECISION AND ORDER**

---

Plaintiff Kenneth Bernard Burney is incarcerated at Stanley Correctional Institution and representing himself in this 42 U.S.C. § 1983 action. He is proceeding on Eighth Amendment claims against Defendants Dr. Tommy Onjukka, Dr. Robert Jerome, Dr. Michael A. Brossman, Alina Morgan, Lesly Ruiz Mosqueda, and Dr. Daniel Belotserkovsky based on allegations that they were responsible for scheduling a dental appointment for him and/or treating him in response to his complaints of tooth pain. This matter comes before the Court on Dr. Brossman's motion for summary judgment on the ground that Burney failed to exhaust administrative remedies and on the merits. (ECF No. 60.) For the following reasons, Dr. Brossman's motion for summary judgment will be granted.

**PRELIMINARY MATTERS**

Pursuant to the local rules, along with a motion for summary judgment, the moving party is required to file a statement of proposed material facts as to which it contends there is no dispute and that entitle it to judgment as a matter of law. Civil L.R. 56(b)(1). The statement of proposed facts should consist of numbered paragraphs containing short factual statements with specific references to affidavits, declarations, parts of the record, and other supporting materials. Civil

L.R. 56(b)(1)(C). Dr. Brossman submitted proposed findings of fact in support of his motion for summary judgment in compliance with the local rules. (*See* ECF No. 62.)

A party opposing a motion for summary judgment must file a response to the moving party's proposed facts to make clear to the Court which, if any, of the proposed facts are in dispute. The opposing party must respond to *each* paragraph. Civil L.R. 56(b)(2)(B). Any uncontroverted fact is deemed admitted for the purpose of deciding summary judgment. Civil L.R. 56(b)(4).

Dr. Brossman, as required by the local rules, included a copy of Federal Rule of Civil Procedure 56, Civil Local Rule 7, and Civil Local Rule 56 along with his motion for summary judgment. (*See* ECF No. 60.) In addition, the day after Dr. Brossman filed his motion for summary judgment, the Court entered a notice and order informing Burney that he was required to "respond to each of the proposed facts by agreeing with each proposed fact or explaining why he disagrees with a particular proposed fact." (ECF No. 64 at 1.) The Court also explained that "[i]t is not enough for Burney to file only a declaration telling his side of the story. Civil L.R. 56(b)(2)(B) requires Burney to respond to *each* proposed fact." (*Id.* at 2.) The Court warned Burney that if he "does not respond to a proposed fact, the Court will assume that Burney does not dispute the proposed fact and will accept the proposed fact as true, regardless of contrary statements in a declaration." (*Id.*)

On July 10, 2026, Burney filed additional proposed findings of fact. He filed additional exhibits on July 13, 2026, and a response to Dr. Brossman's motion for summary judgment on July 15, 2026. Civil Local Rule 56(b)(2)(B) requires that a statement of additional facts include "references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the facts described in that paragraph." Civil L.R. 56(b)(2)(B)(ii). Burney's additional proposed findings of fact do not comply with the district's local rules because Burney does not cite to any declarations or other supporting materials to support each proposed fact.

Because Burney's additional proposed findings of fact are not supported and violate Civil Local Rule 56(b)(2)(B)(ii), the Court will not consider them. *See Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809–10 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with [the local rules], the court chooses to ignore and not consider the additional facts that a litigant has proposed.").

In addition, Burney did not respond to Dr. Brossman's proposed facts. Accordingly, as the Court warned Burney would happen if he failed to respond to Dr. Brossman's proposed facts, those facts are deemed admitted for the purpose of deciding summary judgment. *See Phoneprasith v. Greff*, No. 21-3069, 2022 WL 1819043 (7th Cir. June 3, 2022) (holding that a district court is entitled to deem unopposed facts admitted under Civil L.R. 56(b)(4) regardless of a non-movant's detailed opposition brief, affidavit, and exhibits); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (same). With these considerations in mind, the Court turns to the substance of Dr. Brossman's motion for summary judgment.

## BACKGROUND

At all times relevant, Burney was incarcerated at Green Bay Correctional Institution (GBCI). Dr. Brossman is a dentist licensed in the State of Wisconsin and worked at GBCI from September 23, 2024, to March 13, 2025. Dr. Brossman saw Burney for a dental exam on February 5, 2025. During the dental exam, Burney reported that his left tooth (tooth #18) "hurts" and "has been sensitive to cold" since 2020. Dr. Brossman adjusted an existing filling on tooth #18. Dr. Brossman noted no new decay or loose teeth. He diagnosed Burney with gingivitis and periodontitis. No other urgent tooth problems were discussed or reported during the exam. (ECF No. 62, ¶¶ 1–9.)

Burney submitted a Dental Services Request (DSR) on March 11, 2025. He stated, "I'm having pain in my front tooth and it's very loose from biting into an apple. It hurt very bad. Would like to be seen immediately and for any other option." (*Id.* ¶¶ 10, 13.)

Dr. Brossman triaged the DSR that same day. Triage of DSRs is governed by DAI Policy 500.40.02. Under DAI Policy 500.40.02, inmates must be placed on an appropriate dental waiting list based on the category of their dental problem. Based on the February 5, 2025, exam and Burney's reported dental problem, Dr. Brossman placed Burney on the "Essential Wait List." (*Id.* ¶¶ 14–17.)

Inmates placed on the Essential Wait List are seen in chronological order. Under DAI Policy 500.40.02, the expectation is that inmates on the Essential Wait List will be seen within eight weeks. Dr. Brossman's last day at GBCI was March 13, 2025, only two days after he placed Burney on the Essential Wait List. (*Id.* ¶¶ 22–24.)

On April 18, 2025, Burney filed an inmate complaint, GBCI-2025-5555. He stated:

> I'm not getting adequate dental care. Want to receive pass for dental.
>
> I've sent over 8 Dental Services Request and the only response I've received is saying you are on essential waiting list.
>
> On or about March 1, 2025 my tooth looked black and hurt real bad and properly needed extracted. I sent over 10 DSR and still they have not sent me a pass for treatment.

(ECF No. 57 at 6.)

On May 13, 2025, the Inmate Complaint Examiner recommended affirming the complaint. He explained:

> Inmate Burney, Kenneth DOC number 496386 complains, on 04/18/25 with a time of 2:00 PM, of not getting adequate dental care.
>
> This examiner, post review of complaint and post communicating with dental department, notes that complainant was seen 02/05/25. During exam, no new decay was noted and no loose tooth.

> DSR was completed by complainant on 03/11/25 and was placed on the essential waiting list to be seen. Correspondence with dental department was May 13, 2025 and complainant has not been seen since being placed on waiting list. The expectation is that individuals on the essential waiting list are to be seen within an eight week period of time.
>
> This examiner recommends that this complaint be affirmed as complainant has been on the essential waiting list for a period of time great[er] than eight weeks.

(*Id.* at 2.) The Reviewing Authority affirmed the complaint on May 27, 2025. (*Id.* at 3.)

## LEGAL STANDARD

"A motion for summary judgment is a contention that the material facts are undisputed and the movant is entitled to judgment as a matter of law." *Hotel 71 Mezz Lender Ltd. Liab. Co. v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(a)). The Court does not "weigh the evidence and determine the truth of the matter" but rather "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The movant has the burden to show that summary judgment is appropriate. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021). The Court will "read the facts and draw all reasonable inferences in the light most favorable to the non-moving party." *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 945 (7th Cir. 2024) (citation omitted). Nonetheless, the non-movant must go beyond mere allegations and conclusions and instead support its contentions with proper documentary evidence. *Foster v. PNC Bank*, 52 F.4th 315, 320 (7th Cir. 2022); *Weaver*, 3 F.4th at 934. Speculation is insufficient to create a genuine dispute of material fact. *Id.* If the movant sustains its burden and shows both that there are no disputed material facts and that it is entitled to judgment as a matter of law, "[t]he court shall grant summary judgment . . . ." Fed. R. Civ. P. 56(a).

## ANALYSIS

### A. Exhaustion

Dr. Brossman asserts that Burney failed to exhaust administrative remedies against him before initiating this action. Under the Prison Litigation Reform Act (PLRA), "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). The Seventh Circuit applies a "strict compliance approach to exhaustion," *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), and expects inmates to adhere to "the specific procedures and deadlines established by the prison's policy," *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). "Failure to exhaust is an affirmative defense for which the defendants carry the burden of proof." *Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018) (citation omitted).

Wisconsin has established the Inmate Complaint Review System to review inmate complaints. Wis. Admin. Code § DOC 310.05. Inmates must file an inmate complaint with the Inmate Complaint Examiner within 14 days of the relevant occurrence giving rise to the complaint. § DOC 310.07(2). The Inmate Complaint Examiner shall either reject the complaint or send a recommendation to the Reviewing Authority. § DOC 310.10(9). The Reviewing Authority has fifteen days to make a decision following the receipt of the recommendation or appeal of a rejected complaint. § DOC 310.11(1). An inmate who is dissatisfied with the resolution of his inmate complaint may appeal the decision to the Correctional Complaint Examiner within 14 days. § DOC 310.12. The Secretary shall make a decision within 45 days following receipt of the Correctional Complaint Examiner's recommendation and that decision is final. § DOC 310.13.

Dr. Brossman argues that GBCI-2025-5555 was not timely filed as to him and did not give the institution notice of the claims against him. "The PLRA exhaustion requirement ensures that 'a prison has received notice of, and an opportunity to correct, a problem' before being drawn into litigation." *Jackson v. Esser*, 105 F.4th 948, 958–59 (7th Cir. 2024) (quoting *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013)). An inmate's "complaint will suffice for exhaustion purposes if it provides notice to the prison of 'the nature of the wrong for which redress is sought.'" *Id.* at 959 (quoting *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020)).

Burney's complaint gave GBCI sufficient notice of the issues on which he bases his claims against Dr. Brossman in this case. Burney stated in his complaint that since March 2025, he had not received adequate dental care for his front tooth. (ECF No. 57 at 6.) The Inmate Complaint Examiner reviewed the grievance and noted that Burney was seen on February 5, 2025, completed a DSR on March 11, 2025, was placed on the Essential Waiting List, and had not been seen since being placed on the list. The Inmate Complaint Examiner recommended affirming the complaint because Burney had been on the Essential Waiting List for longer than eight weeks. (*Id.* at 2.) The Reviewing Authority affirmed the complaint on May 27, 2025. (*Id.* at 3.) In short, Burney gave GBCI notice of "the nature of the wrong for which redress is sought." *Jackson*, 105 F.4th at 959 (internal quotation marks and citation omitted).

Dr. Brossman also argues that Burney failed to exhaust administrative remedies because he did not appeal the Reviewing Authority's decision to the Correctional Complaint Examiner. Yet, the Reviewing Authority issued Burney a favorable decision by affirming Burney's complaint. Dr. Brossman's "notion that [Burney] should have appealed to higher channels after receiving the relief he requested in his grievance is not only counter-intuitive, but is not required by the PLRA." *Thornton v. Snyder*, 428 F.3d 690, 697 (7th Cir. 2005). Indeed, "[o]nce a prisoner has won all the relief that is available under the institution's administrative procedures, his

administrative remedies are exhausted." *Id.* at 695–96 (internal quotation marks and citation omitted). Dr. Brossman has not sustained his burden of showing that Burney failed to exhaust his available administrative remedies before filing this action. Therefore, Dr. Brossman's motion for summary judgment is denied on this basis.

**B. Merits**

Burney asserts that Dr. Brossman violated the Eighth Amendment by being deliberately indifferent to his tooth pain. "[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotation marks omitted). "This principle applies equally to dental care." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (citing *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment. It asks (1) "whether a plaintiff suffered from an objectively serious medical condition" and (2) whether the individual defendant was deliberately indifferent to that condition." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc)).

An official is deliberately indifferent if that official was aware that the prisoner faced a substantial risk of serious harm but disregarded the risk by consciously failing to take reasonable measures to address it. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997); *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "Something more than negligence or even malpractice is required." *Pyles*, 771 F.3d at 409. Courts defer to a medical professional's treatment decision unless no minimally competent professional would have chosen the same course of treatment under the circumstances. *Id.* A "[d]isagreement between a prisoner and his doctor or even between two medical professionals about the proper course of treatment generally is insufficient, by itself, to

establish an Eighth Amendment violation." *Id.* "[T]he Eighth Amendment does not entitle prisoners to choose their course of treatment." *Harris v. Molinero*, 803 F. App'x 1, 5 (7th Cir. 2020).

On March 11, 2025, Burney submitted a DSR stating, "I'm having pain in my front tooth and it's very loose from biting into an apple. It hurt very bad. Would like to be seen immediately and for any other option." (ECF No. 62, ¶ 13.) Dr. Brossman triaged the DSR that same day. Based on Dr. Brossman's February 5, 2025, exam notes and Burney's reported dental problem, Dr. Brossman concluded that Burney's loose tooth and associated pain did not require immediate or emergency dental care. He accordingly placed Burney on the Essential Wait List to be seen by a dentist. Inmates placed on the Essential Wait List are seen in chronological order, and the expectation is that they will be seen within eight weeks.

Burney asserts that Dr. Brossman should have immediately examined him, rather than place him on the Essential Wait List, knowing it could take eight weeks to be seen by a dentist. Even though Burney was dissatisfied with Dr. Brossman's decision to place him on the Essential Wait List without examining him after he submitted his March 11, 2025, DSR, his "mere disagreement" with Dr. Brossman's "medical judgment is not enough to support an Eighth Amendment violation." *Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017) (internal quotation marks and citation omitted). In cases where prison officials "delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm." *See Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007) (citations omitted). Burney offers nothing but his own belief to support his claim that he suffered serious harm as a result of the delay in treatment. Such speculation is insufficient to allow a jury to find in his favor. *See Flowers*, 105 F.4th at 945 ("Speculation cannot create a genuine issue of fact that defeats summary judgment."

(citation omitted)). In sum, Burney has not presented any evidence showing that Dr. Brossman's decisions were so below the range of acceptable care that "no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (citation omitted).

In addition, Dr. Brossman's last day at GBCI was March 13, 2025, only two days after he placed Burney on the Essential Wait List. Dr. Brossman had no other interaction with Burney. Once Dr. Brossman left GBCI, he had no control over when Burney would receive dental treatment. In light of Dr. Brossman's limited involvement and his effort to provide Burney with treatment by placing him on the Essential Wait List, no jury could reasonably conclude that he was deliberately indifferent to Burney's loose tooth and associated pain. Therefore, Dr. Brossman is entitled to summary judgment.

## CONCLUSION

For these reasons, Dr. Brossman's motion for summary judgment (ECF No. 60) is **GRANTED**. Burney's claim against Dr. Brossman is dismissed, and Dr. Brossman is terminated as a defendant from this action.

**SO ORDERED** at Green Bay, Wisconsin on September 1, 2026.

s/ *Byron B. Conway*
BYRON B. CONWAY
United States District Judge